UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

ZACHARY JOSEPH AUGUGLIARO,  Case No. 20-32000-JDA
            Chapter 7
 Debtor.        Hon. Joel D. Applebaum
_____/

## **OPINION DENYING CREDITOR'S MOTION TO DISMISS**

The matter before the Court is Creditor Mary Caswell's ("Ms. Caswell" or "Creditor") Motion to Dismiss. For the reasons set forth below, Ms. Caswell's Motion is DENIED.

I.

## FACTUAL BACKGROUND

In 2020, Ms. Caswell sued Zachary Augugliaro ("Debtor") and his company, Z&J Contracting, for breach of contract in State of Michigan 67th District Court (Case. No. C19G8814), alleging that she suffered damages as a result of Debtor's and/or Z&J Contracting's incomplete and shoddy concrete work at her home. Debtor did not appear at the state court hearing, and the state court awarded Ms. Caswell a default judgment in the amount of $4,693.84, plus interest.

On December 10, 2020, Debtor filed his chapter 7 bankruptcy petition. On his Summary of Assets and Liabilities, he lists $17,900 in assets and $28,507.84 in liabilities. According to Schedules E/F, Debtor's unsecured debt consists of student loans totaling $14,382 and other general unsecured debt in the amount of $13,976.84. The general unsecured debt is comprised of two judgments, one in the amount of $7,500 and Ms. Caswell's judgment in the amount of $4,708.84. The remainder of the debts listed on Schedule E/F consist of a debt of $634 to Commonwealth Financial Services, two debts in the amount of $567 each to Credit Business Services, and a $149 debt for "[o]bligations arising out of a separation agreement or divorce that you did not report as priority claims".

Along with his Schedules, Debtor filed his Form 122A-1 "Chapter 7 Statement of Your Current Monthly Income" which shows that Debtor's income is below the median for his size of household and that there is no presumption of abuse.

Debtor's bankruptcy filing then triggered the Court to issue a Notice of Chapter 7 Bankruptcy Case dated December 10, 2020 which was served on Debtor's creditors. The Notice indicated that the Debtor's section 341 first meeting of creditors would be held on January 11, 2021 and that the deadline for filing objections to Debtor's discharge was March 12, 2021.[1]

---

[1] The Notice states, in relevant part:

On February 8, 2021, Ms. Caswell sent a letter addressed to the Clerk of the Court and the chapter 7 Trustee in this case (the "Trustee") seeking to have Debtor's bankruptcy dismissed on the grounds that Debtor was allegedly hiding assets, understating his income, and not disclosing a marijuana business that he owns. The letter attaches over 80 pages of documents consisting of screenshots of Debtor's Facebook posts and text messages between Debtor and Ms. Caswell as examples of Debtor's many falsehoods. The last line of Ms. Caswell's letter states, "[B]ased upon this evidence of Augugliaro's dishonest statements and documentation below, I am requesting that his bankruptcy case be dismissed." The letter did not reference any section of the Bankruptcy Code. However, Ms. Caswell attached a copy of the text of 11 U.S.C. § 727, the Bankruptcy Code section addressing whether a debtor's

---

For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.
This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.

\*　　\*　　\*

The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)

Line 9 of the Notice sets forth the date to object to discharge [under § 727] or to challenge whether certain debts are dischargeable [under § 523] and indicates that making those objections requires the filing of a complaint.

3

general discharge should be denied based on certain conduct. Because Ms. Caswell's letter specifically requested that Debtor's case be dismissed and because no adversary proceeding was filed seeking a denial of discharge under § 727,[2] the Court docketed and treated Ms. Caswell's letter and attachments as a motion to dismiss Debtor's bankruptcy case under 11 U.S.C. § 707 (the "Motion").

On March 8, 2021, Debtor responded to the Motion, refuting Ms. Caswell's allegations that he was dishonest on his bankruptcy schedules. Debtor further explained that any dishonest statements he made to Ms. Caswell about his work or his income were simply intended to calm the tension between Ms. Caswell and himself, and to assure her that he could and would perform under their contract.

On March 10, 2021, based on a stipulation between Debtor and the Trustee, the Court entered an order extending the deadline for filing a complaint objecting to discharge to April 30, 2021. (Docket No. 26) The extension of this deadline was not limited to the Trustee. No complaint objecting to discharge was ever filed by any party in interest.

---

[2] Even though Ms. Caswell attached a copy of 11 U.S.C. § 727 to her letter, an action under § 727 must be filed as an adversary proceeding within a certain time period. Fed. R. Bankr. P. 7001(4); 4004(a). Based upon the allegations in Ms. Caswell's letter and the myriad attached documents, it is unlikely Debtor's actions would meet the standard for relief under § 727 even had Ms. Caswell timely filed an adversary proceeding under that section.

On May 4, 2021, Ms. Caswell filed a Supplemental Motion to Dismiss (the "Supplement"), attaching additional documents setting forth other alleged dishonest statements by Debtor.

On May 5, 2021, this Court held a lengthy hearing on Ms. Caswell's Motion, at which time each party argued extensively. The Court adjourned the hearing until May 12, 2021 to allow the Trustee to report on her on-going investigation into Debtor's conduct and the allegations raised in Ms. Caswell's Motion and Supplement.

The Trustee appeared at the May 12, 2021 hearing and represented to the Court that, based on her investigation, she believed that Debtor's Schedules were accurate as filed, and that Debtor was a below median income debtor who did not have any assets available for distribution to creditors. The Trustee's conclusions were based, in part, on her examination of Debtor's bank accounts, business records, and tax returns, as well as Debtor's testimony at a Rule 2004 examination. *See Fed. R. Bankr. P. 2004*. During the Rule 2004 examination, Debtor testified that he was living off of odd jobs, unemployment compensation and food stamps. Moreover, Debtor testified that he suffers from a degenerative eye disease, is blind in one eye, and that his treatment is covered by Medicaid. (Docket No. 37, Rule 2004 Examination Transcript). The Court then inquired of Ms. Caswell whether, based on the Trustee's investigation and findings, she still wished to pursue her Motion.

Ms. Caswell indicated that she did because Debtor had been dishonest to her, had dodged service of process, and had avoided her efforts to collect on her state court judgment.

Ms. Caswell is prosecuting this Motion *pro se*. Because she acknowledges that she lacks personal knowledge of all or the overwhelming majority of the documents attached to her Motion and Supplement, and in an effort to allow both parties to avoid the costs associated with an evidentiary hearing, the Court and the parties crafted an agreed procedure for handling the hearing on the Motion. Under this procedure, the Court treats all of documents attached to Ms. Caswell's Motion and Supplement as admitted into evidence. In addition, the Court treats Ms. Caswell's oral presentation and argument about her communications with Debtor as her testimony. The Debtor, in turn, relies on his schedules and amended schedules, his written and oral responses to the Motion and Supplement, and the transcript of his Rule 2004 examination.

On June 8, 2021, Ms. Caswell filed a letter asking permission to dispute statements Debtor made in his Rule 2004 examination once she has had an opportunity to review a copy of the examination transcript. That request was granted so that her supplements would be similarly treated under the agreed procedure.

On June 25, 2021, Debtor filed the transcript of his Rule 2004 examination.

On July 14, 2021, the Court held another hearing, at which time Debtor again confirmed that he would not be submitting any exhibits, and would rely on the Rule 2004 examination transcript, his oral and written responses to Ms. Caswell's submissions, and his schedules and amended schedules filed in the case. In light of the extensive arguments at previous hearings, the Court determined that further argument on the Motion would not be necessary or helpful to the Court in reaching a decision on the merits of the Motion.

On July 16, 2021 and on July 19, 2021, Ms. Caswell filed a second supplemental motion to dismiss and additional exhibits. As previously noted, the Court treats these additional exhibits as admitted into evidence and her second supplement as additional testimony in support of her Motion.

II.

LAW AND ANALYSIS

The question before the Court is whether Debtor's case should be dismissed under 11 U.S.C. § 707. Because Ms. Caswell did not specify whether she wanted to proceed under subsection (a) or (b), the Court will address both subsections.

**A. Analysis of 11 U.S.C. § 707(a)**

Turning first to § 707(a) of the Bankruptcy Code, this subsection identifies three grounds that constitute "cause" for dismissal of a bankruptcy case; namely,

unreasonable delay by debtor that is prejudicial to creditors, nonpayment of any fees or charges required under chapter 123 of title 28, and debtor's failure in a voluntary case to timely file certain required information. Dismissal because of this last ground may only be on a motion by the United States Trustee. None of these grounds apply here. The three enumerated grounds, however, are non-exclusive. Another ground for dismissal under § 707(a), albeit not explicitly stated in the statute, is a lack of good faith in filing the bankruptcy petition. *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126-1127 (6th Cir. 1991); *Merritt v. Franklin Bank, N.A. (In re Merritt)*, 211 F.3d 1269, *2 (6th Cir. 2000); *Rahim v. Pacifica Loan Four, LLC (In re Rahim)*, 449 B.R. 527, 533 (E.D. Mich. 2011). In determining whether a debtor has filed bankruptcy in good faith, courts consider all of the facts and circumstances surrounding the bankruptcy filing. *Zick*, 931 F.2d at 1127-8. Some of the factors courts consider include: (1) whether the debtor enjoyed or continues to enjoy a lavish lifestyle; (2) whether the debtor made an effort to reduce expenses; (3) whether the debtor has an ability to repay creditors; (4) whether the debtor made any payments towards his debt; (5) whether the debtor is capable of making a substantial income; (6) whether the debtor filed bankruptcy to discharge a single debt or debts to a single creditor; (7) whether the debtor has assets available for distribution and, if so, whether those assets were properly disclosed; and (8) the age and health of the debtor. *See*, *Zick*, 931 F.2d at 1128, *In Rahim*, 449 B.R. 527,

531 (E.D. Mich. 2011), *In re Brown*, 88 B.R. 280, 283-4 (Bankr. D. Hawaii 1988).

Each case, of course, must be evaluated on an individual basis. Courts may also rely

on what is commonly referred to as the "smell test" in determining good faith. *Zick*,

931 F.2d at 1127-8 *citing Morgan Fiduciary, Ltd. v. Citizens & Southern Intern.*

*Bank*, 95 B.R. 232, 234 (S.D. Fla. 1988). The Sixth Circuit cautioned, however, that

dismissal based on a lack of good faith should only be used in egregious cases. *Id.*

at 1129; *See also, In re Mohr*, 425 B.R. 457, 466 (Bankr. S.D. Ohio 2010)("bad faith

dismissals should not be taken lightly").

In this case, the Court finds that Debtor did not lack good faith in filing his

bankruptcy. Debtor is a man in his 30's with a serious medical condition that has

caused blindness in one eye and is impairing Debtor's sight in his other eye. He has

a low income and very few assets. Debtor lives with his girlfriend and two children

in a rental property. He does not enjoy a lavish lifestyle. While one of Debtor's

largest debts is owed to Ms. Caswell, he owes a still larger judgment debt to another

couple and has several other debts as well. Based on these specific circumstances,

Debtor's case does not warrant a dismissal based on abuse.

With respect to Debtor's admission that he lied to Ms. Caswell about the

success of his businesses and his ability to complete the job as bid, these lies, by

themselves, do not rise to the level of conduct that the Sixth Circuit requires for

dismissal under § 707(a). "[M]erely because a debtor has not dealt honestly with a

particular creditor does not preclude that debtor from seeking bankruptcy relief." *In re Goyner,* 383 B.R. 316, 320 (Bankr. N.D. Ohio 2007)(the fact that debtor-wife received a large cash advance on the eve of filing did not warrant dismissal of the case on bad faith grounds).[3] Section 707 is "not directly concerned with a debtor's conduct toward individual creditors, but is rather focused on the debtor's conduct toward the bankruptcy process as a whole." *Id*. at 321. In this case, the Trustee examined Debtor's bank accounts, business records and tax returns, and questioned Debtor at his Rule 2004 Examination. As a result of this inquiry, the Trustee determined that Debtor's Schedules were accurate as filed. For this reason, this Court finds that Debtor's conduct towards the bankruptcy process is not abusive. Fraud against a specific creditor such as Ms. Caswell is addressed *infra*.

Because dismissal under § 707(a) for a lack of good faith is not warranted here, the Court turns to § 707(b) to determine if the Debtor's case should be dismissed under that Code subsection.

---

[3] The *Goyner* case was decided under § 707(b)(3)(A). As is discussed more fully *infra* p. 14-15, courts have treated § 707(a)'s "lack of good faith" and § 707(b)(3)(A)'s "bad faith" interchangeably.

## B.    Analysis of 11 U.S.C. § 707(b)

Subject to certain limitations, § 707(b)(1) explicitly states that a bankruptcy case may be dismissed for abuse of the provisions of the bankruptcy code.  Section 707(b)(1) states, in relevant part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. . . .

In this case, the most significant limitation on dismissal under § 707(b)(1) is set forth in § 707(b)(6), which provides that, with respect to a below median income debtor, "[o]nly the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b) . . . ."  Here, as attested to in his schedules and as confirmed by the Trustee, Debtor is a below median income debtor and, therefore, only the Court or the United States trustee can pursue a motion to dismiss under §707(b).   "This safe harbor preserves to some extent the protections against motions brought by creditors under section 707(b) to coerce or harass debtors who cannot afford to defend them.  It limits the use of section 707(b) by creditors and trustees to debtors whose income is above the applicable state median income level." 6 *Collier on Bankruptcy* ¶ 707.04 (16th ed. 2021).  Because Ms. Caswell is

not authorized to bring this Motion to Dismiss against the below median income Debtor, her Motion must fail.

Even were the Court to find, contrary to the Trustee's investigation and Debtor's filings, that § 707(b)(6) is inapplicable, as the moving party under § 707(b), Ms. Caswell bears the burden of proving abuse by a preponderance of the evidence. *In re McVicker*, 546 B.R 46, 51 (Bankr. N.D. Ohio 2016). Here, Ms. Caswell cannot meet her burden. There are three pathways for a case to be dismissed as abusive under § 707(b). These are found in § 707(b)(2) and § 707(b)(3). Under § 707(b)(2), abuse is presumed if the debtor fails the "means test" – a mechanical pass/fail test that establishes a presumption of abuse when a debtor is deemed to have the ability to make a meaningful distribution to unsecured creditors in a chapter 13 plan. *See*, 11 U.S.C. § 707(b)(2). This presumption may be rebutted by special circumstances. *See*, 11 U.S.C. § 707(b)(2)(B). In this case, the Debtor's 122A-1 form indicates that he is a "below median income" debtor -- a finding which is unrebutted. Consequently, there is no presumption of abuse of the bankruptcy process by Debtor under § 707(b)(2).

Under § 707(b)(3), Debtor's case may nevertheless be dismissed if the Court determines that Debtor filed his case in "bad faith" or if "the totality of the circumstances demonstrates abuse." Section 707(b)(3) states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which

12

the presumption in paragraph (A)(1) of such paragraph does not arise or is rebutted, the court shall consider–

> (A) whether the debtor filed the petition in bad faith; or

> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

In her Motion, Ms. Caswell argues that Debtor's case should be dismissed because he was hiding assets, understating his income, and not disclosing a marijuana business he owned. Ms. Caswell provided this Court with over eighty-three pages of text messages and Facebook posts which show or infer that Debtor was a skilled workman with a successful business and many jobs. Ms. Caswell argues that this evidence is inconsistent with his filed schedules and she therefore believes Debtor misrepresented his financial condition to the Court.

As the case progressed, Ms. Caswell also argued that Debtor dealt dishonestly with her personally by failing to complete the concrete job, making dishonest statements to her, providing her with false documentation and then avoiding service of process and collection efforts. Ms. Caswell also argues that Debtor is not needy, pointing again to Debtor's Facebook posts and text messages that state or infer that Debtor has a high income and substantial assets. These posts show off Debtor's expensive truck and Debtor's vacations with his girlfriend and kids.

In determining whether the case should be dismissed on the grounds of "bad faith" under § 707(b)(3)(A), courts have used the *Zick* standards for lack of good faith. *In re Oot*, 368 B.R. 662, 666 (Bankr. N.D. Ohio 2007) ("Although [*Zick* was] decided under subsection (a) of § 707, this decision's tenets have significant relevance in any "bad faith" analysis under § 707(b)"); *see also Kaylor v. Rankin*, 356 F. Supp.2d 839, 853 (N.D. Ohio 2005) (bad faith has been defined as the opposite of good faith); *In re Baum*, 386 BR 649, 652-3 (Bankr. N.D. Ohio 2008)(court used the standard set forth in *Zick* for determining lack of good faith under § 707(a) to evaluate bad faith under § 707(b)(3)(A)). This Court has already explained its reasoning for why Debtor's case should not be dismissed for lack of good faith under § 707(a). That same reasoning applies to Ms. Caswell's Motion under § 707(b)(3)(A) as well.

Under the "totality of the circumstances" test set forth in § 707(b)(3)(B), abuse can be shown either (1) where the debtor has acted dishonestly or (2) where the debtor is not needy, i.e. his financial situation does not warrant a discharge in exchange for the liquidation of his assets." *In re Weixel*, 494 B.R. 895, 901-902 (6th Cir. BAP 2013) citing *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). In determining whether a debtor is acting honestly, courts examine whether the debtor made substantial eve-of-bankruptcy purchases, was dishonest in filing his bankruptcy schedules and other court documents, and whether the bankruptcy was

necessitated by unforeseen or catastrophic events. *In re Krohn*, 886 F.2d at 126. In determining whether a debtor is needy, the court must determine whether the debtor could pay his debts out of future earnings, *i.e.*, whether the debtor could fund a hypothetical Chapter 13 plan. Lack of neediness alone may compel a dismissal of the case. *Id*.; See also, *In re Zaporski*, 366 B.R. 758, 770-71 (Bankr. E.D. Mich. 2007) ("[M]isconduct and improper purposes, or bad faith, are not necessary elements for a court to dismiss under new § 707(b)(3)(B)").

Ms. Caswell's argument -- that Debtor's bankruptcy should be dismissed because the Debtor acted dishonestly *towards her* -- does not present a basis for the dismissal of Debtor's case under § 707(b)(3)(B). In a case where a creditor is alleging fraud by the debtor, that creditor is better served by filing an adversary proceeding objecting to discharge under § 523 of the Bankruptcy Code. Section 523(a)(2) prevents the discharge of debts incurred by fraud, § 523(a)(4) prevents the discharge of debts incurred through embezzlement and larceny, and § 523(a)(6) excludes from discharge debts incurred by the willful and malicious actions of a debtor. Allowing dismissals under § 707(b)(3) for actions more specifically addressed by § 523(a) would render § 523 provisions largely redundant if, in most instances, the same wrongful acts supported both a finding of nondischargeability and the dismissal of the debtor's case under § 707(b)(3). The *Goyner* court explains this distinction:

Reading § 707(b)(3)(A) with too close a focus on the debtor's actions toward an individual creditor thus ignores the basic principle of statutory construction that an interpretation that renders another statute superfluous, especially one within the same statutory scheme, is to be avoided. *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 35, 123 S.Ct. 2041, 2048, 156 L.Ed.2d 18 (2003). Additionally, affording too much weight to a debtor's conduct toward a single creditor ignores the statute's focus on the bankruptcy case as a whole.

*Goyner*, 383 B.R. at 321. This Court agrees. In this case, Debtor admits to lying to Ms. Caswell about his businesses and successes, and Debtor evaded service and collection in the state court case. This type of dishonesty, however, is not dishonesty as to the bankruptcy case as a whole. For this reason, Debtor's actions towards Ms. Caswell do not support dismissal under § 707(b)(3)(B).

There are other reasons that militate in favor of an adversary proceeding rather than a motion to dismiss under § 707(b). Adversary proceedings under § 523 incorporate significant procedural safeguards associated with a lawsuit. Allowing a creditor with a § 523(a) action to simply seek the dismissal of the debtor's bankruptcy case under § 707(b)(3) would render those important safeguards meaningless. In this case, Ms. Caswell did not file an adversary proceeding alleging fraud under § 523(a) and, therefore, cannot pursue these fraud allegations under § 707.

Ms. Caswell also claims, based upon the numerous Facebook screenshots, that Debtor is not needy. It is certainly true that Debtor's Facebook posts brag that he is operating at least one, possibly two, profitable businesses. Self-serving Facebook posts, regardless of how often repeated, are simply not as credible as the bankruptcy

filings Debtor made *under oath*, the testimony Debtor gave at his Section 341 hearing *under oath*, and the Trustee's independent investigation and review of Debtor's bank accounts, business records, and tax returns. For this reason, the Court relies upon the filed schedules and amended schedules and the Trustee's independent investigation and concludes that Debtor is in dire financial straits. Therefore, dismissal under § 707(b)(3)(B) would not be appropriate in this case.

## III.

## CONCLUSION

For the above stated reasons, the Court DENIES Creditor's Motion to Dismiss under 11 U.S.C. § 707(a) and (b).

**Signed on September 24, 2021**



/s/ Joel D. Applebaum

**Joel D. Applebaum**
**United States Bankruptcy Judge**